INTERNATIONAL SHOE CO. v. DAWA-
HARE'S, Inc.

Court of Appeals of Kentucky.
March 6, 1953.

G. C. Wilson, Hazard, Richard O. Rumer, St. Louis, Mo., for appellant.

D. G. Boleyn and E. C. Wooton, Hazard, LeRoy W. Fields, Whitesburg, for appellee.

STEWART, Justice.

International Shoe Company, hereinafter referred to as "International," sued Dawahare's, Incorporated, herein mentioned as "Dawahare," for $2505.90, with 6% interest thereon from October 1, 1948, alleging this sum was a balance due International on a shipment of shoes made by it during the year 1948 to Dawahare's store at Pikeville. Dawahare operates five or more retail stores in southeastern Kentucky besides the one at Pikeville, among which is its original or parent store at Whitesburg. By answer, counterclaim and cross-petition, Dawahare admitted the indebtedness but it sought to avoid payment thereof on two grounds: First, it claimed it had an exclusive right to sell International's "Star Brand" shoes in and around Whitesburg, based upon an agreement it averred it made with International in 1935 or 1936, and that, in violation of this agreement, International sold this brand of shoes to another merchant in Whitesburg during the year 1948, to Dawahare's damage in the sum of $1500. Secondly, it claimed it placed an order for 70

dozen pairs of shoes for its Whitesburg store with International's salesman, W. A. McLendon, in late March or early April, 1948, for fall delivery, and that McLendon and International failed and refused to deliver any shoes pursuant to this order, to Dawahare's damage in the sum of $2500. By counterclaim and cross-petition Dawahare asked judgment over against International for $4000, the total of the foregoing amounts, subject to a credit thereagainst of $2905.90, which Dawahare conceded it owed International.

By agreement of the parties the cause was submitted to the court without the intervention of a jury and judgment was rendered for Dawahare for the full amount prayed for in the counterclaim, but at the same time International was credited with the sum admittedly due it.

On this appeal International urges a reversal because, first, it insists there was never any exclusive contract of dealership existing between Dawahare and International, and second, it contends Dawahare failed to prove it placed an order with International for 70 dozen pairs of shoes or any order for any shoes for its fall season of 1948.

S. F. Dawahare began his mercantile operations at Whitesburg many years back, and it is his evidence that must establish an exclusive dealership arrangement, assuming such ever existed at all, because it is very apparent in reading the record that all the other witnesses who testified relative to the special contract obtained their knowledge of it by hearsay. He testified that either in 1935 or 1936 he purchased a shipment of shoes from International's salesman, McLendon, who at that time agreed International would "sell no shoes, men's, women's or children's lines, to no other store in my neighborhood." Dawahare did not establish that the purported exclusive agreement was ever ratified by International, or, indeed, that it was ever brought to International's attention; and it is admitted the so-called agreement was never reduced to writing. S. F. Dawahare had several sons and when each of them attained maturity he associated himself with the business his father had begun at Whitesburg and which business he subsequently expanded into other sections of the state. The mercantile operation, a few years back, was incorporated and branch stores of the corporation were located at Pikeville and other cities in southeastern Kentucky, which fact we have heretofore mentioned. However, the record does not indicate the controversial contract was ever assigned to the corporation after the business was incorporated.

International's witnesses testified that it is not now, nor has it ever been, its custom to grant exclusive selling rights to any merchant at any place. McLendon in testifying denied he ever entered into any such special agreement with Dawahare. Furthermore, it was brought out, and at no time contradicted in the record, that each order sheet used by all International salesmen contained the following printed language on it, a copy of which was always delivered to the merchant with each purchase order of shoes, to-wit:

"All agreements must be in writing. We recognize no verbal understanding. Salesmen are not authorized to make exclusive sales agreements. * * * This order must be approved and accepted by the Company at St. Louis 3, Missouri."

It seems clear that the authority of the salesman, McLendon, to make such a contract as that contended for by Dawahare is lacking, if only we consider the foregoing statement printed on each order blank, which statement was unquestionably brought to Dawahare's attention. McLendon was shown to be no more than a traveling salesman who took orders from prospective customers and transmitted them on to his principal for acceptance or rejection. The burden was on Dawahare to prove that the salesman was empowered to make the exclusive contract, or that International had knowledge of it and ratified it at the time it accepted the order in 1935 or 1936. and shipped the merchandise covered by it. Peaslee-Gaulbert Co. v. Rogers, 220 Ky. 338, 295 S.W. 137, 138, 55 A.L.R. 377. It is obvious, we think, that Dawahare did not sustain this burden. More than that, it is inconceivable that Dawahare could reasonably believe an ordinary traveling salesman was clothed with sweeping authority to

verbally bind his company to a special agreement such as the one under consideration. This exact proposition was passed upon in International Shoe Co. v. Johnson, 252 Ky. 440, 67 S.W.2d 505, 507, and there this Court held as follows, quoting from the Peaslee-Gaulbert Company case:

"The accepted rule is: 'If the drummer assumes to exercise, in and about the making of the sale, authority of an unusual, improbable, and extraordinary character, such as would be sufficient to place a reasonably prudent person upon his guard in dealing with him, the party so dealt with will not be justified in disregarding what his common sense must tell him, and be permitted thereafter to seek to hold the principal to the contract so made, upon the theory it was made within the scope of the agent's apparent authority.' "

We have had no difficulty in arriving at the conclusion that Dawahare failed completely to prove the existence of any special agreement with reference to its Whitesburg store and it follows that the lower court erred in allowing Dawahare damages of $1500 against International on this score.

■ International's second contention is that no order for shoes for fall delivery was ever given by Dawahare in March or April, 1948, for its Whitesburg store. The salesman, McLendon, testified he never entered Dawahare's store at Whitesburg after the 15th of March, 1948; he denied that Dawahare ever gave him an order for 70 dozen pairs of shoes at any time in 1948; and he insisted emphatically that Dawahare had never bought so large a shipment of shoes from International. Officials of International testified that no such order from Dawahare was received by it during the period in question. Nor did Dawahare produce any documentary evidence to substantiate its claim in this respect.

Two facts were proven that strongly militate against Dawahare's contention it bought the shoes in controversy. One is that correspondence from Dawahare to International was introduced which established beyond question that at the very time the order is asserted to have been placed with International by Dawahare the latter was deeply concerned about having too many shoes in stock in its Whitesburg store in view of the belief it entertained that a "coal miners strike was just ahead" and that its business would come to a standstill if the strike occurred. In this connection, Dawahare wrote several letters countermanding the back orders for shoes it had placed with International for delivery to the Whitesburg store during 1948. Thus, on April 29, 1948, Dawahare wrote to International: "We are, therefore, canceling the back orders listed, also orders and back orders mentioned in our recent letter * *." Can we reasonably assume Dawahare in the same breath would be buying a great number of shoes and be cancelling all orders for shoes in the spring of 1948? It was next established that early in August of 1948 W. W. Dawahare, evidently learning that International had sold a shipment of shoes to another merchant in Whitesburg, made a trip to St. Louis and, according to his admission, proceeded to buy from the Brown Shoe Company such shoes as he needed for the store at Whitesburg for the fall season of 1948. On this point Dawahare frankly stated it felt itself free to buy shoes from whomsoever it chose and that it also reserved the right to discontinue purchases from International at its option. Would Dawahare double-up on shoes under the circumstances?

But, assuming for the sake of argument that International breached its contract by its failure to ship the shoes in controversy, there are no facts or figures proven upon which a calculation of the amount of any loss can be estimated. As to the damages Dawahare claimed it suffered by reason of its failure to obtain the shoes supposedly ordered from International W. W. Dawahare testified that the Whitesburg store made no profit on the shoes Dawahare bought from the Brown Shoe Company covering the same period of time. However, he offered not even a shred of proof to back up this assertion. When asked about losses attributable to International's failure to ship the shoes he contended the store ordered, this same witness first made broad statements as to losses and then he finally

conceded on cross-examination that the damages he had testified to were based on "guesses" because the Whitesburg store had kept no records in this respect.

The conclusion is inescapable that the allowance of $2500 in damages to Dawahare for the breach of an alleged contract with reference to shoes it claimed it bought from International in March or April, 1948, is flagrantly against the evidence. Moreover, the record does not justify the finding that such a contract ever existed.

A procedural question was raised by appellant that from our view of this case it becomes unnecessary to answer.

Wherefore, the judgment is reversed with directions that it be set aside and for further proceedings consistent with this opinion.